UNITED BENEFIT LIFE INSURANCE
COMPANY, 123 South Broad Street,
Philadelphia, Pennsylvania,

v.

J. Jerome KATZ, 121 South Broad Street,
Philadelphia, Pennsylvania,

and

Ada A. Feldman, 3901 E. Roosevelt Blvd.,
Apt. 6D, Philadelphia, Pennsylvania.

Civ. A. No. 22734.

United States District Court
E. D. Pennsylvania.

Oct. 10, 1957.

Walter B. Gibbons, Philadelphia, Pa., for plaintiff.

Edwin P. Rome, Philadelphia, Pa., for Ada A. Feldman.

Louis H. Slifkin, of Katz & Slifkin, Philadelphia, Pa., for J. Jerome Katz

GRIM, District Judge.

Under the Federal Interpleader Act, 28 U.S.C.A. §§ 1335, 1397 and 2361, plaintiff, an insurance company, seeks to interplead two claimants to the proceeds of a $50,000 life insurance policy plaintiff issued November 16, 1953. One claimant, defendant Ada A. Feldman, has moved to dismiss, contending that the claim of the other defendant, J. Jerome Katz, is so wanting in substance that the action must be dismissed. Defendant Katz has filed an answer demanding judgment for the policy proceeds.

The Interpleader Act, Section 1335 of Title 28 U.S.C.A., provides:

"(a) The district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader filed by any person, firm, or corporation * * having in his or its custody or possession money or property * * * or having issued a * * * policy of insurance * * * of $500 or more * * * if

"(1) Two or more adverse claimants, of diverse citizenship * * are claiming or may claim to be entitled to such money or property, or to any one or more of the benefits arising by virtue of any * * * policy or other instrument * *; and if (2) the plaintiff has deposited such money or property or has paid the amount of * * * such instrument * * * into the registry of the court, there to abide the judgment of the court * * *"

Both claimants are citizens of Pennsylvania but no one has contended that proper diversity does not exist. Plaintiff, the stakeholder, is a citizen of Nebraska.

On December 16, 1946, plaintiff issued a $50,000 modified whole life insurance policy, No. 696709, on the life of Matthew K. Stevens, which by written assignment dated November 5, 1948, and consented to by plaintiff on November 15, 1948, was assigned to J. Jerome Katz.

On December 16, 1950, the 1946 policy was "cash surrendered" and payment was made jointly to the insured and Katz, thus cancelling this policy. At the time of the surrender, plaintiff issued a new $50,000 five year renewable term policy, No. 1,078,374, on Stevens' life. On January 25, 1951, J. Jerome Katz, as "absolute assignee of policy 696709", executed a "special application" to plaintiff stating that he "does hereby approve the insured's request for a conversion of this policy [No. 696709] from $50,000 Modi-

fied Whole Life coverage to $50,000 Five Year Renewable Term coverage." There is nothing in the record to explain why action to approve a conversion of the old policy was taken forty days after it had been cancelled or to explain the significance, if any, of an approval forty days after cancellation. Defendant Katz contends that the new policy, No. 1,078,374, was merely a substitution for the old policy which had been assigned to him.[1] The fact that this special application by Katz, the assignee of the 1946 policy, approved conversion of that policy to a different type of coverage after it had been cancelled appears to buttress his claim.

On November 16, 1953, the insured terminated policy No. 1,078,374, and plaintiff issued to him a $50,000 five year renewable term policy, No. 1,203,705. Ada A. Feldman, defendant, joined in the application for the policy and was named in the policy beneficiary and owner. On February 21, 1957, while the 1953 policy was in force, Stevens, the insured, died. Defendants Feldman and Katz have both filed proofs of claim under it. Katz' contention apparently is that policy No. 1,203,705 is a substitution for policy No. 1,078,374.

The 1948 assignment of policy No. 696709 to Katz is on a form apparently furnished by plaintiff insurance company. The top line of the form is "Assignment of Policy No. ———." In the blank line appears the typewritten number "696709". Above it appears the handwritten number "1,078,374", and to the right of the latter the handwritten number "1203705". A line has been drawn through each of the first two numbers. The third remains untouched. Like entries and deletions appear on the 1951 special application. Katz lays great stress upon the entry of the 1953 policy number on the assignment as an indication that he has an interest in the 1953 policy. Although it was stated at the argument by plaintiff's counsel that this

<hr>

1. The record does not show who the beneficiaries of the 1946 and 1951 policies were or what rights, if any, they may have had in the policies.

entry was made by the insurance company only for filing purposes, no proof has been introduced to establish the circumstances under which the entry was made.

■ As the record now stands it would appear that the Katz claim may be weak, but not so weak that I can say there is no substance to the claim and so dismiss this proceeding. In Hunter v. Federal Life Ins. Co., 8 Cir., 1940, 111 F.2d 551, at page 556, the court said:

"The jurisdiction of a federal court to entertain a bill of interpleader is not dependent upon the merits of the claims of the defendants * * * It is our opinion that a stakeholder, acting in good faith, may maintain a suit in interpleader for the purpose of ridding himself of the vexation and expense of resisting adverse claims, even though he believes that only one of them is meritorious. As the Supreme Court said in Myers v. Bethlehem Shipbuilding Corporation, 303 U.S. 41, 51, 58 S.Ct. 459, 464, 82 L.Ed. 638: 'Lawsuits also often prove to have been groundless; but no way has been discovered of relieving a defendant from the necessity of a trial to establish the fact.' "

■ The fundamental basis for interpleader is to permit the holder of a fund who admits he is not the owner of it to put the fund in the hands of the court, so that claimants with substantial contentions may fight out their claims to it and so that the holder will be shielded from the danger of deciding at its peril who is rightfully entitled to the fund, as well as from the burden of defending and danger of losing separate lawsuits brought by each claimant.

As stated by Judge Hastie in Bierman v. Marcus, 3 Cir., 1957, 246 F.2d 200, 203, "* * * Where the plaintiff knows that he can safely pay one party without substantial risk of vexatious demand by a rival claimant interpleader will not lie." In that case it was held not to lie because there was not the slightest possibility that the plaintiffs would be in danger of a serious claim from Milmar, Inc., one of the two defendants, which plaintiffs controlled and of which they were the sole stockholders.

■ It cannot be said of the plaintiff in the case at bar, however, that it knows it can pay Feldman without substantial risk of vexatious demand by Katz. The possibility of any such knowledge is negatived by the possibly meritorious position Katz has taken and his activities in maintaining it: employing counsel and through them making demands and filing proofs of claim.

The cases which defendant Feldman cites in support of her motion to dismiss do not help her much. In John Hancock Mutual Life Ins. Co. v. Beardslee, 7 Cir., 1954, 216 F.2d 457, 461, a daughter of the insured wrote a letter to the insurance company stating that if the insurance company's agent had not misinformed her she would have been named the beneficiary. No proof of claim had been filed by the daughter. The court held that under the circumstances the daughter was not an adverse claimant under the statute and entered judgment in favor of the beneficiary named in the policy. "Instead of amounting to a claim of right her letter could only be considered as a plea for help." In New York Life Insurance Co. v. Lee, 9 Cir., 1956, 232 F.2d 811, an interpleader action was dismissed because the full amount of the sum claimed under an insurance policy (principal plus interest and attorney's fee) had not been paid into the registry of the court. The case was decided solely on this point, the court saying, (at page 814): "* * * We find no occasion for inquiring whether the alleged Grusenmeyer claim was lacking in sufficient substance to warrant interpleader * * *" Both the John Hancock and New York Life cases are readily distinguishable from the present case.

It appears that the Katz claim against plaintiff may be twofold. He claims $50,000, either in the form of the proceeds of this policy or as damages on

some other theory of contract or tort in case it should appear that plaintiff did not handle the assignments properly. While this interpleader will not necessarily put an end to Katz' claim, if he can sustain it on a theory which does not affect Feldman's claim, the fact that the Katz claim has two prongs does not in any way avert the threat of the prong aimed at the policy proceeds in this action.

Plaintiff has paid $50,000 into the registry of the court. No contention has been made that this sum is insufficient.

No action will be taken at the present time on plaintiff's request that it be allowed attorney's fees and costs. After a trial the court will be in a better position than it now is to determine whether or not there is real substance to the claim of J. Jerome Katz to the proceeds of policy No. 1,203,705 and what the equities will require as to (1) the payment of attorney's fees (2) costs, and (3) interest on the sum due under the policy.

Defendant Ada A. Feldman's motion to dismiss is denied.