### LEADER NATIONAL INSURANCE COMPANY, Plaintiff,

v.

Bobby Austin SHAW, Personal representative of the Estate of Anthony Shaw, deceased; Bobby Austin Shaw, individually and as next of kin of Jessica Shaw, deceased; Estelle Shaw, individually and as next of kin of Jessica Shaw, deceased; Elia Herren, individually and as next of kin of Minnie Shaw and Jessica Shaw, each deceased; James Kearby; David Seely, individually and as parent and next friend of Allison Seely, Jeff Seely and J. Edward Seely, each a minor; Paul Gunkel, individually and as father and next friend of Lindsey Gunkel, a minor; Jeffrey Glenn; Group Health Service of Oklahoma, d/b/a Blue Cross and Blue Shield of Oklahoma; Baptist Medical Center of Oklahoma, Inc.; United States of America; Farmers Union Hospital Association, d/b/a Great Plains Regional Medical Center, Defendants.

Tig Insurance Company, a California Corporation, and Earl L. Henderson Trucking Company, an Illinois Corporation, Third–Party Defendants.

No. CIV–94–662–A.

United States District Court, W.D. Oklahoma.

June 28, 1995.

Mark W. Albert, Albert & Albert, Elk City, OK, Gary F. Duckworth, Hugh A. Manning, Baker Baker & Tait, Oklahoma City, OK, and Ben T. Schmitt, Harris McCausland & Schmitt, Overland Park, KS, for Leader National Insurance Company.

Randy L. Bumgarner, Michael McNulty, Mark T. Koss, McNulty Koss & Bumgardner, Oklahoma City, OK, and John Sprowls, Pauls Valley, OK, for Bobby Austin Shaw.

**318**

Tom Cooper and Brett Agee, Garvin Agee Carlton & Mashburn, Pauls Valley, OK, for James Kearby.

G. Robinson Stratton, III and G. Scott Ray, Ray & Stratton, Oklahoma City, OK, for Elia Herron.

Mark W. Albert, Albert & Albert, Elk City, OK, for David Seely, Rebecca Seely, Allison Seely, Jeff Seely, J. Edward Seely.

David Seely, Elk City, OK, pro se.

Tim N. Cheek and John D. Cheek, Cheek Cheek & Cheek, Oklahoma City, OK, for Jeffery Glenn, Tig Ins. Co., and Earl L. Henderson Trucking Co.

John K. Williams, Williams Luttrell & Boren, Oklahoma City, OK, for Baptist Medical Center of Oklahoma Inc.

Emmanuel E. Edem, Norman Edem McNaughton & Wallace, Oklahoma City, OK, for Ana Herren, Special Administratrix of the Estate of Jessica Shaw, deceased and Minnie Shaw, deceased defendant.

Randy D. Witzke and Greg D. Givens, Edmonds Cole Hargrave Givens & Witzke, Oklahoma City, OK, for TTC Illinois Inc.

### ORDER

ALLEY, District Judge.

This matter comes before the Court on the Motion for Summary Judgment, filed by plaintiff, Leader National Insurance Company ("Leader National"), pursuant to Fed. R.Civ.P. 56(a). Defendants, Group Health Service of Oklahoma[1], Elia Herren, Ana Herren[2] and James Kearby, responded in opposition to the motion. Defendants Seely did not respond in opposition to the motion.[3] For the reasons stated herein, the Court grants in part and denies in part plaintiff's motion.

The relevant facts of the motion for summary judgment in this interpleader action

are largely undisputed.[4] Leader National issued an automobile insurance policy ("the Policy") to Anthony and Minnie Shaw, covering the period of June 15, 1993 through September 15, 1993. The Policy was issued in Chapman, Kansas through Range Financial Services. On July 1, 1993, Anthony Shaw was involved in an accident while driving the insured car.

The July 1, 1993 accident occurred near Elk City, Oklahoma. For purposes of the instant motion, it will be assumed that the accident arose at least in part due to Anthony Shaw's negligence, resulting in the deaths of Anthony and Minnie Shaw and their infant daughter Jessica. James Kearby and Elia Herren were passengers in the Shaw vehicle and sustained substantial injury. The Policy provided for bodily injury coverage of $25,000/person and $50,000/accident. The Policy also provided for uninsured/underinsured motorist coverage of $25,000/person with a maximum of $50,000/accident. Pursuant to these provisions, plaintiff paid $100,000 into the Court registry.

Plaintiff alleges that Personal Injury Protection ("PIP") payments have been made to the Personal Representative of the Estate of Anthony Shaw, for Anthony, Minnie and Jessica Shaw. Defendant Ana Herren contests this fact, asserting that she is unaware that any such payment have been made. The remaining defendants have considered the issue and determined that they are ineligible for PIP benefits. In its Reply, plaintiff contends that Ana Herren has received notification of payment and raises no objection. The Court received no supporting documentation of such, and accordingly cannot consider this fact resolved for summary judgment purposes.

Defendant James Kearby is a domiciliary and resident of Oklahoma, as is Bobby Aus-

---

1. Group Health Services of Oklahoma seeks to recover for the unpaid medical bills of defendant James Kearby.

2. Ana Herren objects to the motion in her role as Special Administrative of the Estates of Minnie and Jessica Shaw.

3. Although the motion is deemed confessed as to the Seelys, the Court shall address the propriety of their claims for Personal Injury Protection (PIP) proceeds and uninsured/underinsured coverage.

4. Leader Nation has been bifurcated from the negligence action pending between certain defendants and the third-party defendants.

tin Shaw, personal representative of Anthony Shaw's estate. Elia and Ana Herren are residents of Texas. The parties agree that Anthony and Jessica Shaw were domiciled in Oklahoma at the time of the accident; however, they resided in Kansas. Defendants argue that Minnie Shaw was a domiciliary of Oklahoma, and plaintiff contends that Texas was her domicile. Mrs. Shaw resided in Kansas with her husband and child.

Plaintiff moves for judgment with regard to bodily injury liability, asserting that benefits have been paid to the policy limits.[5] Leader National also seeks a declaration that it is not liable for uninsured/underinsured motorist coverage. Defendants challenge the motion, asserting that the issues presented are not ripe and therefore a decision on the motion should be stayed pending the outcome of the liability portion of the case. Defendants argue that summary judgment is inappropriate, as Oklahoma law applies and may dictate that uninsured/underinsured coverage exists under the Policy.

Summary judgment is appropriate if the pleadings and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). "[A] motion for summary judgment should be granted only when the moving party has established the absence of any genuine issue as to a material fact." *Mustang Fuel Corp. v. Youngstown Sheet & Tube Co.,* 561 F.2d 202, 204 (10th Cir.1977). Any doubt as to the existence of a genuine issue of material fact must be resolved against the party seeking summary judgment. *Board of Educ. v. Pico,* 457 U.S. 853, 863, 102 S.Ct. 2799, 2806, 73 L.Ed.2d 435 (1982). In addition, the inferences drawn from the facts presented must be construed in the light most favorable to the nonmoving party. Nonetheless, a party opposing a motion for summary judgment may not simply allege that there are disputed issues of fact; rather, the party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "[T]here is no issue for trial unless there is

sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). The moving party is entitled to judgment as a matter of law when the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The perplexing question in this case is whether underinsured coverage is payable at all. Under Oklahoma law underinsured coverage may be available to the claimants, under Kansas law such coverage is not. Whether Kansas or Oklahoma law applies is dependent on how the case got to this Court. Therefore, the outcome of plaintiff's motion depends largely on the procedural history of this case.

Plaintiff initially filed this action in the United States District Court for the District of Kansas. Asserting an action pursuant to 28 U.S.C. § 2361, plaintiff requested that the Court distribute the funds payable under the Shaws' policy to the legally entitled claimants. Defendants sought and received a change of venue to this Court. Defendants' motion for a change of venue was couched under 28 U.S.C. §§ 1404(a), 1406(a), 1335, and 1397. Plaintiff did not respond to the motion, resulting in confession and transfer of the case. Because plaintiff did not respond to the motion, no opinion was issued delineating the basis for transfer. As the statutory basis for transfer dictates the choice of law in the case, the Court must attempt to reconstruct the basis upon which the District Court of Kansas relied in transferring the case.

■ A federal change of venue may be effectuated pursuant to 28 U.S.C. § 1404 or § 1406. The statutory basis for the change

---

5. In light of defendants' declarations of ineligibility as to Personal Injury Protection ("PIP") proceeds, the Court shall not address the issue.

Summary Judgment is granted as to the claims for PIP filed by defendants Kearby and Elia Herren.

is dependent on whether venue was proper in the original forum. Cases transferred between federal district courts pursuant to 28 U.S.C. § 1404(a), are transferred for the convenience of the parties and the witnesses. In such cases, venue is proper in both the transferor court and the transferee court. Following transfer pursuant to § 1404(a), the transferee court applies the substantive law of the transferor court. *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir.1991) (citing *Ferens v. John Deere Co.*, 494 U.S. 516, 528–33, 110 S.Ct. 1274, 1282–84, 108 L.Ed.2d 443 (1990)).

■ 28 U.S.C. § 1406(a) calls for transfer of a case where venue is improper in the transferor court. Under § 1406(a), the case is transferred to a forum where venue is proper and the law of the transferee court applies. *Ellis v. Great Southwestern Corp.*, 646 F.2d 1099 (5th Cir.1981). On issues of federal law, the distinction between applying the law of the transferee or the transferor is almost irrelevant. Where jurisdiction is based on diversity of citizenship, however, the distinction is of utmost importance. This importance is magnified, where, as in this case, the potentially applicable laws conflict. If the Kansas court relied on § 1404(a) to transfer this action, the laws of Kansas will apply. Defendants admit that under Kansas law there is no potential for recovery under the uninsured/underinsured provision of the Shaws' insurance policy. Defendants argue, however, that the transfer from Kansas was pursuant to § 1406(a) and therefore Oklahoma law applies, which may allow recovery under the Policy's underinsured provision.

In order to determine whether § 1404 or § 1406 provided the basis for transfer, the Court must determine whether venue was proper in Kansas. Plaintiff argues that venue was proper as the original action sought declaratory relief as well as interpleader relief and therefore § 1391 dictates where venue is proper.[6] Defendants argue that 28

U.S.C. § 1397 is the applicable statute for determining where venue was proper for plaintiff's interpleader action and that Kansas was improper.

There are two types of federal interpleader, "statutory" and "rule." *See Wilmington Trust Co. v. Gillespie*, 397 F.Supp. 1337, 1342 (D.C.Del.1975). Fed.R.Civ.P. 22, the source of "rule" interpleader, allows an interpleader action where all plaintiffs are diverse in citizenship from all defendants, if the amount in controversy exceeds $50,000. 28 U.S.C. § 1332. In cases of "rule" interpleader, venue is determined by reference to 28 U.S.C. § 1391, the general venue provision. In cases of "statutory" interpleader, those actions under 28 U.S.C. 1335, venue is determined by 28 U.S.C. § 1397, a special venue provision. In order to determine which statute governs venue in this matter, the Court must consider whether plaintiff's plead an action for "statutory" or "rule" interpleader.

Plaintiff cited to 28 U.S.C. § 2361 in pleading its complaint. 28 U.S.C. § 2361 provides that "[i]n any civil action of interpleader or in the nature of interpleader under section 1335 of this title, a district court may issue its process for all claimants." § 2361 by its terms applies only to "statutory" interpleader. Additionally, the Historical Notes following § 2361 indicate that the 1949 amendment "makes clear that section 2361 of Title 28, U.S.C., applies only to statutory actions and not to general equity interpleader suits in which the jurisdictional amount and diversity of citizenship requirements are the same as in other diversity cases." Plaintiff's reliance of § 2361 in pleading its complaint makes this action one of "statutory interpleader." As such, if venue was proper in Kansas, it must have been proper pursuant to 28 U.S.C. § 1397.[7]

■■ 28 U.S.C. § 1397 provides that statutory interpleader actions "may be brought in the judicial district in which one or more

---

6. The pertinent portion of 28 U.S.C. § 1391 provides that in "[a] civil action where jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in ... (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."

7. The Court also notes that plaintiff amended its complaint to rely on 28 U.S.C. § 1335 as the basis for this Court's subject matter jurisdiction.

of the claimants reside." "May" is interpreted as mandating that any such action must be filed only where any claimant resides. *Moseley v. Sunshine Biscuits, Inc.*, 107 F.Supp. 164, 165 (W.D.Mo.1952). Plaintiff does not argue that any claimant resided in Kansas at the time of filing its complaint. Having examined the addresses of the parties at the time of filing, the Court determines that the District Court of Kansas was the improper venue under § 1397 for plaintiff's statutory interpleader action. Because venue was improper in Kansas, the transfer of this action was necessarily pursuant to § 1406(a).

■■■ Having determined that the transfer of this action was pursuant to 28 U.S.C. § 1406(a), the Court must determine whether Oklahoma or Kansas law governs this controversy. Such a determination is made by reference to the transferee forum's choice of law rules. In *Bohannan v. Allstate Ins. Co.*, 820 P.2d 787 (Okla.1991), the court adopted the following rule:

> The validity, interpretation, application and effect of the provisions of a motor vehicle insurance contract should be determined in accordance with the laws of the state in which the contract was made, unless those provisions are contrary to the public policy of Oklahoma, or unless the facts demonstrate that another jurisdiction has the most significant relationship with the subject matter and the parties.

*Id.* at 797. Accordingly, the Court must use Kansas law to determine the extent of underinsured coverage, unless Kansas law violates Oklahoma public policy or if Oklahoma has the most significant relationship to the dispute. Defendants argue that applying Kansas' underinsured motorist law would be in violation of Oklahoma public policy. Defendants additionally argue that Oklahoma has the most significant relationship to this dispute and therefore Oklahoma law should apply.

The Court finds that the application of Oklahoma law is proper in this matter, as Oklahoma has greater contacts with the dispute. Although the policy at issue was sold in Kansas, to Kansas residents, those are the sole contacts between Kansas and this incident. The accident giving rise to this suit occurred in Oklahoma, where defendant Anthony Shaw was domiciled. Defendant Shaw was the policy holder.[8] The car involved in the accident was financed through an Oklahoma dealer. Finally, a majority of the claimants are residents of Oklahoma.

Although Kansas has some interest in the outcome of this matter, Oklahoma has a much greater interest in the policy proceeds being sought by Oklahoma residents. Further, plaintiff is licensed to sell policies in Oklahoma, and although no such policies have been sold, Leader National should have anticipated that it could be sued here and subject to the laws of Oklahoma.[9]

■■ Oklahoma law provides that an underinsured motor vehicle is an "insured motor vehicle, the liability limits of which are less than the amount of the claim of the person or persons making such claim regardless of the amount of coverage of either of the parties in relation to each other." Okla. Stat. tit. 36 § 3636(C). Therefore, Leader National will be liable for underinsured coverage if no other tortfeasor carries insurance sufficient to pay the entirety of defendants' claims.

As the facts necessary to determine whether plaintiff is responsible for such coverage will be determined during the negligence action amongst the defendants, the Court is unable to grant summary judgment on issues regarding underinsured coverage.

■■■ The Court now turns to the claims of the Seely family for PIP and underinsured coverage. The Seely family filed claims for both types of benefits. The Seelys did not respond to plaintiff's motion for summary judgment. The Court has examined the ar-

---

**8.** Although the parties disagree as to the domicile of Minnie Shaw, there is no argument that Kansas was her domicile.

**9.** Plaintiff had the opportunity to challenge defendants' motion to transfer. Although the likeli-

hood of succeeding was low, plaintiff could have argued that venue was proper in Kansas, and, if successful, the transfer would have been pursuant to 28 U.S.C. § 1404(a) and Kansas law would apply to this matter.

guments of plaintiff and finds that judgment is appropriate in plaintiff's favor as to the Seely claims for PIP and uninsured/underinsured coverage. Underinsured motorist coverage extends only to those passengers of the vehicle covered by the applicable policy or to the insured, as defined by the Policy. The Seelys were not passengers in the Shaw vehicle nor were they insured parties under the Policy. The Seelys therefore are not eligible for underinsured coverage.

 The Seely claims for PIP benefits must also fail. Under Kansas statute and under the Policy, PIP protection extends only to auto accidents occurring in Kansas or to injured residents of Kansas, unless the injured parties are insured or are residents of the insured's household. See Policy at 8 & 10, Kan.Stat.Ann. § 40–3109. The Seelys were residents of Oklahoma at the time of the accident and are otherwise not eligible for PIP protection.

The Court denies summary judgment with regard to underinsured motorist coverage. The facts necessary to determine whether plaintiff will be liable under Oklahoma law have not yet been litigated. Additionally, the Court is without factual support for plaintiff's assertion that Ana Herren concedes that PIP benefits have been paid on behalf of Minnie and Jessica Shaw, so the Court is therefore unable to grant judgment in plaintiff's favor as to the PIP claims on their behalf. As to all others making PIP claims, summary judgment is granted.

Plaintiff's motion is GRANTED IN PART and DENIED IN PART.

It is so ordered.